Brittany Rodriguez

Plaintiff,

V.

Equifax Information Services LLC

Defendant.

Civil Action No.

JURY TRIAL DEMANDED

## PRELIMINARY STATEMENT

1. This is an action brought by Plaintiff Brittany L. Rodriguez against Equifax Information Services, LLC ("Equifax"), for multiple violations of the Fair Credit Reporting Act, 15 U.S.C. Section 1681, et seq. ("FCRA"). Equifax has violated the FCRA in two independent ways: first, by maintaining and disseminating inaccurate information on Plaintiff's consumer credit report in violation of 15 U.S.C. Section 1681e(b); and second, by failing to clearly and accurately disclose to Plaintiff all information in Plaintiff's consumer file in violation of 15 U.S.C. Section 1681g(a).
2. The inaccuracies in Plaintiff's Equifax credit report include: (a) an internal and irreconcilable inconsistency in the reported balance for the Nordstrom/TD Bank account; (b) the simultaneous reporting of contradictory account disposition codes on the Ally Financial repossession account; and (c) the reporting of "Date Major Delinquency First Reported" dates on multiple negative tradelines that are substantially more recent than the underlying dates of first delinquency, a pattern consistent with re-aging of derogatory information.
3. Additionally, Plaintiff's February 2, 2026 consumer file disclosure from Equifax contains systemic omissions of account data across multiple tradelines, including blank payment history months, missing account status designations, and absent account detail fields, in violation of Equifax's

statutory duty under 15 U.S.C. Section 1681g(a)(1) to clearly and accurately disclose all information in the consumer's file.

4. As a result of Equifax's violations, Plaintiff has suffered actual damages including damage to her credit reputation, financial harm, frustration, loss of time, and emotional distress. Plaintiff seeks statutory damages, actual damages, punitive damages, and costs of suit.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. Section 1681p, which provides that an action to enforce any liability created under the FCRA may be brought in any appropriate United States district court. This Court also has jurisdiction pursuant to 28 U.S.C. Section 1331.

6. Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b) because Plaintiff resides in this District and a substantial part of the events and omissions giving rise to the claims occurred in this District.

## PARTIES

7. Plaintiff Brittany L. Rodriguez is a natural person residing in Roxbury, Massachusetts. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. Section 1681a(c).

8. Defendant Equifax Information Services, LLC is a limited liability company organized under the laws of the State of Georgia, with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309.

9. Equifax is a nationwide "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. Section 1681a(f). Equifax regularly engages, for monetary fees and on a cooperative nonprofit basis, in the practice of assembling and evaluating consumer credit information for the purpose of furnishing consumer reports to third parties. Equifax uses the facilities of interstate commerce,

including the internet and the United States mail, for the purpose of preparing and furnishing consumer reports. As a CRA, Equifax has been and is at all times aware of its obligations under the FCRA.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Credit Report and Consumer File Disclosure

10. On or about February 2, 2026, Plaintiff obtained a copy of her Equifax consumer credit report and file disclosure, bearing Confirmation Number 6033525741 ("the Report").

11. The Report was prepared and issued by Equifax in response to Plaintiff's request for her consumer file disclosure as provided under 15 U.S.C. Section 1681g(a).

12. The Report reflects a credit history spanning approximately ten years and eight months and contains seven tradelines. Four of those tradelines carry derogatory status designations, including two charge-offs, one collection account, and one repossession.

13. Upon review of the Report, Plaintiff identified multiple inaccuracies in the information Equifax is reporting about her accounts, as well as systemic omissions of account data in the consumer file disclosure Equifax provided to her.

### B. The Nordstrom/TD Bank Balance Inconsistency

14. The Report contains a tradeline for Nordstrom/TD Bank, account ending in *3751, listed as a closed credit card account with a status of Charge Off.

15. The header summary section of the Nordstrom/TD Bank tradeline states that the current reported balance on this account is $0.00, as of the report date of February 2, 2026.

16. However, the 24-month payment and balance history table within the same Nordstrom/TD Bank tradeline displays a balance of $1,389.00 for every single month from February 2024 through December 2025 -- a period of twenty-three consecutive months without a single month showing a

$0.00 balance.

17. The Report thus simultaneously states that the Nordstrom/TD Bank account carries a current balance of $0.00 and that the same account carried a balance of $1,389.00 as recently as December 2025. These two figures are directly contradictory and cannot both be accurate.

18. A consumer, lender, landlord, or any other third party reviewing Plaintiff's Equifax credit report cannot determine from the face of the report which of these two figures is correct, or whether the account has been paid, settled, written off, sold, or discharged.

19. Equifax has disseminated this tradeline, including its contradictory balance figures, to third parties as part of consumer reports furnished about Plaintiff.

20. Equifax's reporting of these contradictory and irreconcilable balance figures on the Nordstrom/TD Bank tradeline constitutes a failure to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports concerning Plaintiff, in violation of 15 U.S.C. Section 1681e(b).

**C. The Ally Financial Contradictory Repossession Codes**

21. The Report contains a tradeline for Ally Financial, account ending in *9636, listed as a closed auto loan account.

22. The Ally Financial tradeline simultaneously carries the following contradictory narrative codes at various points throughout the account's reporting history as shown in the Report: Narrative Code 213 (Involuntary Repossession); Narrative Code 235 (Paid Repossession); and Narrative Code 074 (Redeemed or Reinstated Repossession).

23. These three codes are mutually exclusive descriptions of how a repossession account was ultimately resolved. An account cannot accurately be described simultaneously as an involuntary repossession, a paid repossession, and a redeemed or reinstated repossession. Each of these codes conveys a materially different meaning to any creditor, lender, or third party reviewing Plaintiff's credit report.

24. Specifically: Narrative Code 213 (Involuntary Repossession) indicates that a lender took possession of the collateral without the consumer's cooperation, which carries the most adverse connotation of the three. Narrative Code 235 (Paid Repossession) indicates that the deficiency balance was satisfied after repossession. Narrative Code 074 (Redeemed or Reinstated Repossession) indicates that the consumer recovered the collateral either by paying the full outstanding balance or by reinstating the loan terms.

25. The simultaneous presence of all three codes on the same tradeline in Plaintiff's Report means that Equifax is reporting conflicting and incompatible information about the final resolution of this account. This conflicting information materially and adversely affects any assessment of Plaintiff's creditworthiness by a third-party user of the report.

26. Equifax has disseminated this tradeline, with its contradictory account disposition codes, to third parties as part of consumer reports furnished about Plaintiff.

27. Equifax's simultaneous reporting of contradictory and mutually exclusive account status codes on the Ally Financial tradeline constitutes a failure to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports concerning Plaintiff, in violation of 15 U.S.C. Section 1681e(b).

## D. Re-Aging of Derogatory Tradelines

28. The Report reflects a pattern on multiple negative tradelines in which the "Date Major Delinquency First Reported" field contains a date in 2025 -- years after the corresponding "Date of First Delinquency" field on the same account.

29. Specifically, on the Citizens Bank, N.A. tradeline (*5807), the Date of First Delinquency is listed as October 1, 2019. However, the Date Major Delinquency First Reported for the same account is listed as August 31, 2025 -- approximately five years and ten months after the date of first delinquency.

30. Specifically, on the Nordstrom/TD Bank tradeline (*3751), the Date of First Delinquency is listed as January 17, 2020. However, the Date Major Delinquency First Reported for the same account is listed as August 22, 2025 -- approximately five years and seven months after the date of first delinquency.

31. Specifically, on the LVNV Funding LLC tradeline (*1756), the Date of First Delinquency is listed as August 6, 2020. However, the Date Major Delinquency First Reported for the same account is listed as September 3, 2025 -- approximately five years and one month after the date of first delinquency.

32. Under 15 U.S.C. Section 1681c(a)(4), an adverse item of information other than a criminal conviction may not be reported more than seven years from the date of first delinquency. The seven-year reporting clock begins on the date of first delinquency, not the date a new entity purchased the debt or updated the account.

33. A "Date Major Delinquency First Reported" that differs substantially from the underlying "Date of First Delinquency" presents a materially misleading picture of the age and freshness of the derogatory information to any lender or third party reviewing the report, because it suggests that the derogatory activity is more recent than it actually is.

34. To the extent that Equifax updated, refreshed, or permitted a furnisher to update the "Date Major Delinquency First Reported" on any of these tradelines to a date materially later than the actual date of first delinquency, such conduct constitutes a failure to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports concerning Plaintiff, in violation of 15 U.S.C. Section 1681e(b).

35. Equifax has disseminated these tradelines, with their potentially re-aged derogatory dates, to third parties as part of consumer reports furnished about Plaintiff.

**E. Equifax's Failure to Clearly and Accurately Disclose All File Information**

36. Under 15 U.S.C. Section 1681g(a)(1), upon a consumer's request for a file disclosure, a CRA is required to clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request.

37. The Federal Trade Commission has recognized that a CRA that systematically omits information from a consumer file disclosure does not comply with Section 609 of the FCRA because it does not provide an accurate disclosure of all information in the file. See FTC Advisory Opinion to Darcy (June 30, 2000).

38. Plaintiff's February 2, 2026 consumer file disclosure from Equifax contains systemic omissions of data across multiple tradelines, as set forth below.

39. On the Capital One Bank USA NA tradeline (*0153), the payment history grid for January 2025, February 2025, and March 2025 contains no data, despite the fact that these months fall within the account's reporting period. The account was opened on March 5, 2025, meaning April 2025 onward would be the first full reporting months. The blank months for January and February 2025 predate the account opening and may reflect a formatting deficiency in Equifax's disclosure template that presents blank fields as part of the grid even when no data exists for that period, which renders the disclosure incomplete and confusing to a consumer attempting to verify the accuracy of the information in the file.

40. On the LVNV Funding LLC tradeline (*1756), the following Account Details fields are blank in the consumer file disclosure: Account Status, Terms Frequency, Scheduled Payment Amount, Actual Payment Amount, Date of Last Activity, Date Closed, Date of Last Payment, Activity Designator, and Charge Off Amount. Additionally, the payment history grid shows no data for January 2023, February 2023, and March 2023, and shows no payment code at all for July 2025.

41. On the Nordstrom/TD Bank tradeline (*3751), the following Account Details fields are blank in the consumer file disclosure: Scheduled Payment Amount, Actual Payment Amount, Date of Last

Activity, Date Closed, and Activity Designator.

42. On the Ally Financial tradeline (*9636), the following Account Details fields are blank in the consumer file disclosure: Scheduled Payment Amount (in the header, though it appears in some 24-month history rows), Date of Last Activity, and Date Closed. Additionally, multiple months within the payment history grid across the years 2019 through 2024 show no data.

43. On information and belief, Equifax's data furnishers reported complete account data, including the fields identified in paragraphs 40 through 42 above, to Equifax, and this information was contained within Equifax's file on Plaintiff at the time Plaintiff requested her consumer file disclosure. Equifax's own automated disclosure template, however, omitted this information from the consumer-facing disclosure it provided to Plaintiff.

44. The absence of this data from Plaintiff's consumer file disclosure prevented Plaintiff from being able to clearly identify, research, verify, and evaluate the information Equifax was maintaining about her, including her ability to confirm whether the balances, account statuses, and derogatory dates on her derogatory tradelines were accurate.

45. Courts have recognized that the failure to provide complete account data in a consumer file disclosure impairs the consumer's ability to exercise her right to dispute inaccurate information. See Washington v. Equifax, Case No. 3:19-cv-00154 (M.D. Tenn. Jun. 12, 2019) (holding that plaintiff stated a plausible claim for violation of Section 609 of the FCRA where Equifax omitted account data from the consumer disclosure).

46. Equifax's omission of the account data identified in paragraphs 39 through 42 above from Plaintiff's consumer file disclosure constitutes a failure to clearly and accurately disclose to Plaintiff all information in Plaintiff's consumer file at the time of her request, in violation of 15 U.S.C. Section 1681g(a)(1).

## F. Damages

47. As a direct and proximate result of Equifax's violations of the FCRA described in this Complaint, Plaintiff has suffered actual damages, including but not limited to: damage to her credit reputation and creditworthiness; lost opportunity to obtain credit, housing, or financial services on favorable terms; expenditure of time and personal resources investigating, identifying, and attempting to address the inaccuracies and omissions in her credit report; frustration and confusion caused by the irreconcilable contradictions within her credit report; and emotional distress and mental anguish resulting from the knowledge that inaccurate and incomplete information about her has been maintained and disseminated to third parties by Equifax.

48. Equifax is a sophisticated nationwide CRA that has been subject to federal enforcement actions and consumer litigation concerning its systemic failure to accurately disclose complete consumer file information and its failure to maintain accurate tradeline data. Equifax's continued operation of automated disclosure systems known to omit account information from consumer file disclosures, and its continued dissemination of internally contradictory tradeline data, reflects a knowing and intentional disregard of its obligations under the FCRA, or at a minimum a reckless disregard of those obligations, sufficient to support an award of punitive damages under Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007).

## COUNT I

## VIOLATION OF 15 U.S.C. SECTION 1681e(b) -- FAILURE TO MAINTAIN MAXIMUM POSSIBLE ACCURACY

49. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50. 15 U.S.C. Section 1681e(b) requires that whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

51. Equifax violated 15 U.S.C. Section 1681e(b) by preparing and furnishing consumer reports concerning Plaintiff that contained the following specific inaccuracies: (a) irreconcilable contradictory balance figures for the Nordstrom/TD Bank account (*3751), which simultaneously reflected a current balance of $0.00 in the header and a balance of $1,389.00 in every month of the 24-month payment history; (b) simultaneous and mutually exclusive repossession narrative codes on the Ally Financial account (*9636), including Narrative Code 213 (Involuntary Repossession), Narrative Code 235 (Paid Repossession), and Narrative Code 074 (Redeemed or Reinstated Repossession), without any explanation reconciling these contradictory account dispositions; and (c) "Date Major Delinquency First Reported" figures on the Citizens Bank (*5807), Nordstrom/TD Bank (*3751), and LVNV Funding (*1756) tradelines that are materially more recent than the corresponding dates of first delinquency, presenting a misleading picture of the age of the derogatory information to third-party users of Plaintiff's credit report.

52. Equifax's procedures were not reasonable. A CRA exercising reasonable procedures to assure maximum possible accuracy would not permit a tradeline to simultaneously display a $0.00 balance in one field and a $1,389.00 balance in another field of the same consumer report. A CRA exercising reasonable procedures would not simultaneously assign three mutually exclusive repossession resolution codes to the same account. A CRA exercising reasonable procedures would not permit the date major delinquency was first reported to appear substantially later than the date of first delinquency without reconciling those dates.

53. Equifax's violations of 15 U.S.C. Section 1681e(b) were willful within the meaning of 15 U.S.C. Section 1681n, in that Equifax knowingly or recklessly disregarded its obligations under the FCRA. Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007). The inaccuracies identified in this Count are not isolated data entry errors. They are the product of systemic procedural deficiencies that Equifax has known about for years and has failed to correct.

54. Alternatively, Equifax's violations were negligent within the meaning of 15 U.S.C. Section 1681o.

55. As a result of Equifax's violations of 15 U.S.C. Section 1681e(b), Plaintiff has suffered the actual damages described in paragraph 47.

## COUNT II

## VIOLATION OF 15 U.S.C. SECTION 1681g(a) -- FAILURE TO CLEARLY AND ACCURATELY DISCLOSE ALL FILE INFORMATION

56. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 48 of this Complaint as though fully set forth herein.

57. 15 U.S.C. Section 1681g(a)(1) requires that, upon request, a consumer reporting agency shall clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request.

58. 15 U.S.C. Section 1681j provides that all consumers are entitled to receive, upon request, one free consumer file disclosure every twelve months from each nationwide consumer reporting agency.

59. Equifax violated 15 U.S.C. Section 1681g(a)(1) when it responded to Plaintiff's request for her consumer file disclosure by providing a disclosure that omitted material account information across multiple tradelines. Specifically, Equifax's February 2, 2026 consumer file disclosure failed to clearly and accurately disclose the following information that, on information and belief, was contained within Equifax's file on Plaintiff at the time of her request: (a) on the LVNV Funding LLC tradeline (*1756): Account Status, Terms Frequency, Scheduled Payment Amount, Actual Payment Amount, Date of Last Activity, Date Closed, Date of Last Payment, Activity Designator, Charge Off Amount, and payment history data for January 2023, February 2023, March 2023, and July 2025; (b) on the Nordstrom/TD Bank tradeline (*3751): Scheduled Payment Amount, Actual Payment Amount, Date of Last Activity, Date Closed, and Activity Designator; and (c) on the Ally Financial tradeline (*9636): Date of Last Activity, Date Closed, and multiple months of payment history data across the years 2019 through 2024.

60. On information and belief, the data furnishers for the tradelines identified in paragraph 59 reported

complete account information to Equifax, and this information was stored within Equifax's database as part of Plaintiff's consumer file at the time Plaintiff requested her disclosure. Equifax's consumer disclosure template, however, systematically failed to populate these data fields in the consumer-facing document it provided to Plaintiff.

61. The omission of this account data from Plaintiff's consumer file disclosure directly deprived Plaintiff of her statutory right to receive all information in her file. The omission prevented Plaintiff from being able to independently verify the accuracy of the information Equifax maintains on her, including its accuracy as disseminated to third parties, and from exercising her right to dispute inaccurate information under 15 U.S.C. Section 1681i.

62. The injury Plaintiff suffered from Equifax's failure to provide a complete file disclosure is an informational injury that is concrete and sufficient to confer Article III standing. The FCRA created a right to receive accurate and complete file information, and the denial of that information is itself a cognizable injury regardless of any additional downstream consequence. See Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982).

63. Equifax's violations of 15 U.S.C. Section 1681g(a) were willful within the meaning of 15 U.S.C. Section 1681n. Equifax has known for years, through prior litigation and regulatory scrutiny, that its consumer disclosure template systematically omits account data that data furnishers have reported to it and that is stored in its database. Equifax has not corrected this known systemic deficiency, reflecting a knowing or reckless disregard of its statutory obligations. Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007).

64. Alternatively, Equifax's violations were negligent within the meaning of 15 U.S.C. Section 1681o.

65. As a result of Equifax's violations of 15 U.S.C. Section 1681g(a), Plaintiff has suffered the actual damages described in paragraph 47.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Brittany L. Rodriguez respectfully requests that this Court enter judgment against Defendant Equifax Information Services, LLC, and award Plaintiff the following relief:

a. Actual damages sustained by Plaintiff as a result of Equifax's violations, pursuant to 15 U.S.C. Section 1681n(a)(1)(A) and 15 U.S.C. Section 1681o(a)(1);

b. Statutory damages of not less than $100.00 and not more than $1,000.00 per willful violation, pursuant to 15 U.S.C. Section 1681n(a)(1)(A);

c. Punitive damages as the Court may allow, for Equifax's willful noncompliance with the FCRA, pursuant to 15 U.S.C. Section 1681n(a)(2);

d. Costs of suit pursuant to 15 U.S.C. Section 1681n(a)(3) and 15 U.S.C. Section 1681o(a)(2); and

e. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Brittany L. Rodriguez hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution.

Respectfully submitted,

BR

Brittany Rodriguez, Pro Se

225 Blue Hill Ave, Unit 315

Roxbury, MA 02119

Dated: April 21, 2026